**Owen C. ZEPTNER, Appellant,**

v.

**Frances R. ZEPTNER, Appellee.**

**No. 2–01–254–CV.**

Court of Appeals of Texas,
Fort Worth.

June 26, 2003.

Verner & Brumlsy, P.C., Jimmy L. Verner, Jr., Dallas, for Appellant.

Jerry J. Loftin, Fort Worth, for Appellee.

PANEL A: CAYCE, C.J., DAY and GARDNER, JJ.

### OPINION ON REHEARING

ANNE GARDNER, Justice.

After reviewing Appellant's motion for rehearing, we deny the motion, withdraw our March 20, 2003 opinion and judgment, and substitute the following in their place.

In ten issues, Appellant Owen C. Zeptner complains about the trial court's division of the community estate upon his divorce from Appellee Frances R. Zeptner. Because we hold that the trial court abused its discretion in dividing the com-

munity estate, we reverse and remand in part and affirm in part.

### FACTUAL BACKGROUND

Owen and Frances were married on or about November 26, 1986 and separated on or about October 28, 1998. They had no children. Owen, Frances, and Paul Cary, a tracing expert, testified at trial. During the trial, the trial court struck both parties' other experts for discovery violations. Additionally, all of Frances's exhibits were returned to her after trial at her attorney's request, so they are not in the appellate record. In the divorce decree, the trial court awarded Owen the following community property:

(1) the lot at 100 East Little, Hamilton, Texas;

(2) the lot at 106 East Little, Hamilton, Texas;

(3) all household assets in his possession or subject to his sole control;

(4) all of his clothing, jewelry, and personal effects;

(5) all funds in his sole name or subject to his sole control, including the business checking account located at SouthTrust Bank;

(6) all retirement funds due to his own employment, including the Fidelity Investment IRA in the amount of $11,239.80;

(7) all union benefits;

(8) all life insurance policies insuring his life;

(9) all brokerage accounts, stocks, bonds, and mutual funds, and securities registered in his name, including dividends, stock splits, and other connected privileges;

(10) the 1994 Chevrolet pickup, valued at $8,000;

(11) the tractor and trailer, valued at $5,000;

(12) insurance checks, valued at $496.95;

(13) $24,000 from the Bank United account; and

(14) $80,000 enhancement value of Petitioner's separate property business known as Accu–Tech Machine and Manufacturing.

The trial court awarded Frances the following community property:

(1) the community residence;

(2) all household assets in her possession or subject to her sole control;

(3) all of her clothing, jewelry, and personal effects;

(4) all funds in her sole name or subject to her sole control;

(5) all retirement funds due to her own employment, including the First Savings Bank IRA in the approximate amount of $49,093.35 and the J.C. Penney's Retirement account in the approximate amount of $16,000;

(6) all union benefits;

(7) all life insurance policies insuring her life;

(8) all brokerage accounts, stocks, bonds, mutual funds, and securities registered in her name, including dividends, stock splits, and other connected privileges, including fifteen shares of Sears Roebuck and Company stock, five shares of Dean Witter Discover and Company stock, and twenty-six shares of Allstate Corporation stock, valued at $1300;

(9) the 1998 Chevrolet Monte Carlo, valued at $12,000;

(10) the prepaid burial plan, valued at $11,000;

(11) $12,500, representing one-half of the improvements made to Owen's

separate residence at 104 E. Little, Hamilton, Texas; and

(12) $20,000 from the Bank United account plus any remaining balance after Owen's award of $65,000 was paid.

Owen and Frances were each ordered to pay (a) any debts individually incurred since the separation and (b) all encumbrances, taxes, liens, assessments, and other charges due or to become due on the property each was awarded in the decree unless the decree expressly provided otherwise. The trial court confirmed the following as Owen's separate property: Accu–Tech Machine & Manufacturing,

including but not limited to all furniture, fixtures, machines, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business;

the Hamilton residence; and $41,000 in the Bank United account.

In his motion for new trial, Owen complained that the trial court had erred in dividing the community estate by not considering the fact that Owen had suffered a stroke and attendant medical problems after the trial was completed but before judgment was rendered. Owen argued that as a result of his health problems, he had been unable to work for about six months and could only work part-time thereafter. Further, he alleged that he had incurred substantial bills during this period, which he was unable to pay, and that he had a deficit of $28,884.26, which the court had failed to consider in rendering judgment. Finally, Owen stated that he had been forced to liquidate his Fidelity IRA, take out a $5,500 loan, and collateralize the Hamilton lots, and that the trial

court had failed to consider these increased liabilities and decreased assets in its property division.

Other than a medical records affidavit, there was apparently no evidence in the record at the time the judgment was rendered to prove Owen's claims. The same affidavit was attached to the motion for new trial, as well as a summary of outstanding bills and available cash, but no medical records, notes, or collateral agreements appear in the record before us. The trial court denied the motion for new trial.

In findings of fact set out in the decree, the trial court found:

1. The value of the community residence is $120,000;

2. The value of 100 East Little Road, Hamilton, Texas is $7,000;

3. The value of 106 East Little Road, Hamilton, Texas is $6,000.

4. "[T]he 'enhanced value' of [Owen's] separate property business, Accu–Tech Machine and Manufacturing, . . . is $80,000.00."

5. "[R]eimbursable improvements" were made to [Owen's] separate property home "at 104 East Little Road, in the amount of $25,000.00."

6. The Bank United account has an approximate balance of $81,000, $41,000 of which is Owen's separate property. The remaining $40,000 balance is community.

7. Frances's prepaid burial policy is valued at $11,000.

8. The present value of Frances's J.C. Penney retirement plan is $16,000.

9. Owen's tractor and trailer are valued at $5,000.

10. "[Owen's] reimbursement claims are valued at –0–."

## LEGAL ANALYSIS

A trial court is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties. TEX. FAM.CODE ANN. § 7.001 (Vernon 1998). The party complaining of the trial court's division of property must demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion. *Pletcher v. Goetz,* 9 S.W.3d 442, 446 (Tex.App.-Fort Worth 1999, pet. denied) (op. on reh'g). Under an abuse of discretion standard, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion. *Beaumont Bank v. Buller,* 806 S.W.2d 223, 226 (Tex.1991). They are not independent grounds of error. *Ditraglia v. Romano,* 33 S.W.3d 886, 889 (Tex.App.-Austin 2000, no pet.); *Crawford v. Hope,* 898 S.W.2d 937, 940 (Tex. App.-Amarillo 1995, writ denied). If there is any reasonable basis for doing so, we must presume that the trial court exercised its discretion properly. *Pletcher,* 9 S.W.3d at 446. We will not disturb the trial court's division unless the record demonstrates "that the division was clearly the result of an abuse of discretion." *Id.* That is, we will not reverse the case unless the record clearly shows that the trial court was acting arbitrarily or unreasonably. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

### Reimbursement Claim For Ex–Husband's Lien

In issues six, seven, and eight, Owen complains about the trial court's refusal to order reimbursement from Frances's separate estate to the community estate for community funds that were used to pay off a lien to Frances's ex-husband. Specifically, Owen complains that the trial court's finding that the reimbursement claim was worth zero was against the great weight and preponderance of the evidence. Alternatively, Owen claims that the evidence conclusively established the claim's value at $16,000 (issue six); that the trial court erred in failing to value the claim at $16,000 (issue seven); and that the trial court abused its discretion by failing to consider the claim in its division of the community estate (issue eight).

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). Findings of fact are the exclusive province of the trier of fact. *Bellefonte Underwriters Ins. Co. v. Brown,* 704 S.W.2d 742, 744–45 (Tex. 1986). A court of appeals cannot make findings of fact; it can only "unfind" facts. *Tex. Nat'l Bank v. Karnes,* 717 S.W.2d 901, 903 (Tex.1986). Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the findings. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986); *Reliance Ins. Co. v. Denton Cent. Appraisal Dist.,* 999 S.W.2d 626, 629 (Tex.App.-Fort Worth 1999, no pet.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994).

If an appellant is attacking the legal sufficiency of an adverse answer to an issue on which he had the burden of proof, the appellant must overcome two hurdles. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991). First, the record must be examined for evidence that supports the finding, while ignoring all

evidence to the contrary. Second, if there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *Id.; Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

In reviewing an issue asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *Ames v. Ames,* 776 S.W.2d 154, 158–59 (Tex.1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We do not have to give details of supporting evidence when upholding factual sufficiency of the evidence underlying the trial court's judgment. *Ellis County State Bank v. Keever,* 888 S.W.2d 790, 794 (Tex.1994).

Claims for reimbursement are equitable claims falling within the discretion of the trial court. *Vallone v. Vallone,* 644 S.W.2d 455, 459 (Tex.1982). They are not available as a matter of law. *Id.* These claims accrue when an estate's funds or assets are used to benefit another estate without a corresponding benefit in return. *Id.* Whether the situation involves the payment of a purchase money debt or a capital improvement, the enhancement value is the measure of reimbursement. *Penick v. Penick,* 783 S.W.2d 194, 197 (Tex.1988). In deciding the value of a claim for reimbursement, the benefits to the payor estate must be offset against the benefits to the payee estate. *Id.* Courts look at the costs to both estates as well. *Gutierrez v. Gutierrez,* 791 S.W.2d 659, 662–63 (Tex.App.-San Antonio 1990, no writ). In evaluating the merits of a claim for reimbursement, the trial court should consider "all the facts and circumstances and determine

what is fair, just, and equitable." *Penick,* 783 S.W.2d at 197. The trial court should not simply "return to the [payor estate] the actual amount advanced to reduce the principal indebtedness on the [payee estate's] property without regard to the benefits received in return by the [payor] estate." *Id.* An "equitable claim for reimbursement is not merely a balancing of the ledgers between the marital estates." *Id.* at 198.

The party claiming reimbursement bears the burden of establishing the net benefit to the payee estate. *Vallone,* 644 S.W.2d at 459; *Zieba v. Martin,* 928 S.W.2d 782, 788–89 (Tex.App.-Houston [14th Dist.] 1996, no writ) (op. on reh'g). This burden includes the responsibility to prove the offsetting benefit to the payor estate. *Zieba,* 928 S.W.2d at 788; *Gutierrez,* 791 S.W.2d at 665. Finally, the trial court's discretion in deciding and evaluating this equitable claim for reimbursement is just as broad as its discretion in dividing the community estate. *Penick,* 783 S.W.2d at 198.

In her brief, Frances contends that the trial court did not abuse its discretion in denying reimbursement to the community for funds expended in extinguishing the lien because the funds were either sole management or joint management community property. Alternatively, Frances contends that the trial court did not abuse its discretion in denying reimbursement to the community for funds expended in extinguishing the lien because the obligation to her ex-husband was imposed by court order. We hold that the trial court did not abuse its discretion in refusing to award reimbursement in this instance because Owen did not establish the net benefit to Frances's separate property estate.

The record reveals conflicting testimony about the amount repaid by the

community and the source of the funds. Owen testified that he wrote Frances two checks from the business account for a total of $16,600. Frances testified that those checks were to repay her for money that she had loaned Owen. She also testified that she had paid off the lien to her ex-husband from money that she had earned and that the note had been for $15,000. In his direct examination of Frances, Owen's attorney stated:

Q. ... In your deposition on page 74, line 23, I ask[ed] you: "Wasn't there a note to your ex-husband of 16,600 that was an obligation from a prior divorce?" And how did you answer?

A. It wasn't 16,600. It was 15,000.

Q. Okay. I didn't ask you that. How did you answer?

A. Well, I answered yes, but—

Because the evidence conflicted on the amount of the payment to extinguish the note, Owen failed to conclusively prove the maximum benefit to Frances's separate estate; that is, Owen failed to prove the actual amount that the community paid Frances's ex-husband to extinguish the lien. *See Vallone*, 644 S.W.2d at 459; *Zieba*, 928 S.W.2d at 788–89; *Gutierrez*, 791 S.W.2d at 665.

Owen also failed to establish the offsetting benefits to the community estate. Frances testified that the couple lived in her home eight years before she sold it and that Owen never contributed any rent or mortgage payments for the privilege. She also testified that her total proceeds from the sale of the home went toward the purchase of the community residence. Owen testified that the community made some improvements to the home, including a pool. He also offered evidence that the community did make the mortgage payments from the time of marriage until the home was sold. He disputed Frances's contention that the sales proceeds went toward the purchase of the community residence.

Owen offered no evidence about the offsetting benefits to the community of extinguishing the lien. *Vallone*, 644 S.W.2d at 459; *Zieba*, 928 S.W.2d at 788; *Gutierrez*, 791 S.W.2d at 665. We note that as long as the ex-husband had a lien on the house, the house would be subject to foreclosure. Owen did not establish the benefit the community derived from living in the home almost three years without the secondary lien, nor did he establish the benefit the community derived from Frances's ability to sell the home less than a year before the purchase of the community residence, free of the lien and free of the need to secure a release. Additionally, to the extent that Owen's testimony is true, his payments to Frances to extinguish the lien appear completely voluntary, and the record contains no evidence or allegation that Frances deceived him about the existence of the lien or to get money to pay the lien.

The trial judge was the sole judge of the facts in this case. He was therefore the sole judge of the credibility of the evidence and the weight to assign it. *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 567 (Tex.2000); *Webb v. Jorns*, 488 S.W.2d 407, 411 (Tex.1972). He was also free to resolve any inconsistencies. *Davis*, 34 S.W.3d at 567; *Webb*, 488 S.W.2d at 411. The trial judge could have reasonably deduced that the money that extinguished the loan was a gift or that any benefit to Frances's estate was offset by the community's use of her home and the sales proceeds thereof. He could have also reasonably concluded, as we have, that Owen failed to meet his burden to establish the net benefit to the community estate. Because Owen did not meet his burden of proof, the evidence necessarily did not conclusively establish that the community was

entitled to reimbursement for the community funds expended to pay off the lien, nor was the trial court's finding that the claim was worth nothing against the great weight and preponderance of the evidence. Given that reimbursement is an equitable remedy within the discretion of the trial court and not available as a matter of law, we cannot say that the trial court abused its discretion in refusing to award reimbursement to the community in this instance. *Vallone*, 644 S.W.2d at 459. We overrule Owen's sixth, seventh, and eighth issues.

### Reimbursement Claim for Improvements to Owen's Separate Residence

In issues three, four, and five, Owen complains about the trial court's finding that the community was entitled to reimbursement of $25,000 for improvements made to Owen's separate residence at the community's expense. Specifically, Owen contends that there was no evidence, or insufficient evidence, to support the finding (issue three); that the trial court erred in valuing the claim at $25,000 (issue four); and that the trial court abused its discretion in considering the claim in dividing the community estate (issue five). Again, we note that the legal and factual sufficiency standards of review are subsumed under the abuse of discretion standard. *Beaumont Bank*, 806 S.W.2d at 226. They are not independent grounds of error. *Ditraglia*, 33 S.W.3d at 889.

In determining a "no-evidence" issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661

(1951). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cazarez*, 937 S.W.2d at 450; *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996).

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

The measure of reimbursement when one marital estate expends funds or assets to make capital improvements to the property of another marital estate is the enhancement in value to the receiving estate. *Anderson v. Gilliland*, 684 S.W.2d 673, 675 (Tex.1985); *Cook v. Cook*, 693 S.W.2d 785, 786 (Tex.App.-Fort Worth 1985, no writ). This enhancement is the difference between the fair market value before any improvements and the fair market value after the improvements made during the marriage. *Vickery v. Vickery*, 999 S.W.2d 342, 371 (Tex.1999); *Anderson*, 684 S.W.2d at 675. It is not the actual cost. *Vickery*, 999 S.W.2d at 371; *Anderson*, 684 S.W.2d at 675. The party claiming reimbursement bears the burden of establishing the net benefit to the payee estate. *Vallone*, 644 S.W.2d at 459; *Zieba*, 928 S.W.2d at 788–89.

Frances testified that Owen told her that he spent about $45,000 during the marriage on improvements to the Hamilton residence. Owen testified that the property was appraised at $23,800 for tax purposes. His exhibit 18, admitted into

evidence, shows that the property was appraised at $23,890 on January 1, 1999 and January 1, 2000. There was no evidence about the value of the property before the improvements were added. The evidence was thus both legally and factually insufficient to support the finding that the value of the reimbursement claim was $25,000. Frances did not satisfy her burden of proving the enhanced value to the Hamilton property. Consequently, we hold that the trial court abused its discretion in awarding the community reimbursement of $25,000 for the improvements made to that property. We sustain Owen's fourth and fifth issues.

### Accu–Tech

In his first two issues, which he argues together, Owen challenges the valuation of Accu–Tech. In issue one, Owen contends that there was no evidence or insufficient evidence to support the valuation of Accu–Tech at $80,000. In issue two, he contends that the trial court erred in valuing Accu–Tech at its "enhanced value" rather than at its fair market value. We note at the outset that the trial court did not assign a value to Accu–Tech, which was Owen's sole proprietorship before the marriage and thus his separate property. The court only assigned a value of $80,000 to the community's reimbursement claim.

Owen argues that this award was improperly comprised of equipment purchased during the marriage and professional goodwill. We disagree. This award did not include a value for the equipment because elsewhere in the decree, the trial court awarded Owen as his separate property all equipment used by the business, even the equipment purchased during the marriage.

Owen also contends that the trial court should not have included goodwill in the computation of the value of Accu–Tech because the only goodwill in Accu–Tech was his professional goodwill. We agree with Owen that professional goodwill is not a community asset subject to division. *Nail v. Nail,* 486 S.W.2d 761, 764 (Tex. 1972). However, our review of the record reveals no evidence of either commercial goodwill or professional goodwill, nor does it show that the trial court considered goodwill in arriving at the $80,000 figure. Because the trial court awarded Owen the equipment as his separate property and because we see no evidence of goodwill in the record, we reject Owen's premise that the $80,000 "enhanced value" represents the trial court's valuation of the equipment and professional goodwill.

Owen also contends that "enhanced value" is a measure of reimbursement, not a method of valuation, and that no reimbursement was appropriate with respect to Accu–Tech. Within the discussion of his issues, Owen specifically argues that any equipment acquired during the marriage and used by the business was community property and that the trial court should have divided either the equipment or its fair market value between the parties as community property. It is true that the equipment acquired during the marriage but used by the business was community property. Tex. Fam.Code Ann. § 3.003(a). The trial court erred by not characterizing the equipment as community property and by confirming it as Owen's separate property.

In addition to the equipment that should have been characterized as community property, our review of the record shows that the community had at least two reimbursement claims against Owen's separate estate regarding Accu–Tech that the trial court could have properly recognized if Frances had satisfied her burden of proof—a claim for community funds spent on improvements and a claim for Owen's

time, talent, and labor expended to unreasonably benefit his separate estate.

According to the evidence, equipment was purchased during the marriage at a cost of over $110,000. Frances's reimbursement claim regarding Accu–Tech in her inventory and appraisement, which was admitted into evidence, provided:

At the time of marriage, Accu–Tech was small, with manual equipment, and no revenue. Since the date of marriage, [an] expensive computerized numerical control (CNC) machine was purchased, along with continual upgrades, 3 computers, and a milling machine, that was purchased to enhance the business known as Accu–Tech. Amount claimed: $130,000.

Because the amount claimed is more than the cost of the equipment, it is clear from this statement that Frances combined the value of the equipment, whatever she thought it was, with the increase in the value of the business to reach her claim of $130,000.

 Frances testified that Owen spent about $40,000 on improving the land and building on which Accu–Tech is located. Again, the measure of reimbursement when one marital estate expends funds or assets to improve the real property of another marital estate is the enhancement in value to the receiving estate. *Anderson,* 684 S.W.2d at 675; *Cook,* 693 S.W.2d at 786. It is not the actual cost. *Vickery,* 999 S.W.2d at 371; *Anderson,* 684 S.W.2d at 675. The party claiming reimbursement bears the burden of establishing the net benefit to the payee estate. *Vallone,* 644 S.W.2d at 459; *Zieba,* 928 S.W.2d at 788–89. Frances offered no evidence that the fair market value of the business increased after the improvements. Consequently, she did not satisfy her burden on this claim.

 Additionally, the community estate has a reimbursement claim when the community's time, talent, and labor are used to benefit and enhance a separate estate beyond what is reasonably necessary to maintain and preserve the separate estate without adequately compensating the community. *Jensen v. Jensen,* 665 S.W.2d 107, 109 (Tex.1984) (op. on reh'g); *Vallone,* 644 S.W.2d at 459; *Lifshutz v. Lifshutz,* 61 S.W.3d 511, 519 (Tex.App.-San Antonio 2001, pet. denied). The burden of proving the claim rests with the claimant. *Vallone,* 644 S.W.2d at 459. The burden of securing a finding also rests with the claimant. *Id.*

Owen testified that Accu–Tech was worth $30,500 at the time of trial. His income tax returns showed an accumulated net profit of about $35,000 for the last five fiscal years before the divorce. He admitted to several cash disbursements from company funds during the marriage, from which the judge could have inferred that the community was inadequately compensated, including a 1995 personal loan of $22,500 to an acquaintance and several disbursements to his adult sons by a prior marriage. Frances's testimony also demonstrated that Owen provided her with very little money to pay the mortgage and other household expenses during the marriage. During Owen's attorney's cross-examination of Frances, three checks Owen wrote to Frances that she endorsed were admitted into evidence. They totaled $2,800 and spanned over five years. The evidence also showed disbursements from the business for a down payment on the community residence and for a car.

Despite all this evidence, Frances did not provide evidence to establish the value of Owen's services or how much income the community had already received from the business. She thus did not establish the value of the reimbursement claim for

time, toil, and efforts expended to enhance Accu–Tech. *See Jensen,* 665 S.W.2d at 109–110; *Gutierrez v. Gutierrez,* 791 S.W.2d 659, 665 (Tex.App.-San Antonio 1990, no writ); *Rogers v. Rogers,* 754 S.W.2d 236, 239 (Tex.App.-Houston [1st Dist.] 1988, no writ). Because Frances failed to meet her burden of establishing the community's reimbursement claim against Accu–Tech, the trial court abused its discretion in awarding reimbursement of $80,000. We therefore agree with Owen that there was no evidence to support a reimbursement award of $80,000 with respect to Accu–Tech and that no reimbursement was appropriate with respect to Accu–Tech.

 Frances asserts in her brief that issues one and two are moot because Owen received the entire value of Accu–Tech, including the equipment purchased during the marriage. We cannot agree. The community's worth was distorted negatively by whatever value the trial court assigned to the equipment improperly characterized as Owen's separate property. This error benefitted Owen. But the inappropriate reimbursement of $80,000 to the community artificially inflated the community's worth and decreased the actual value of Owen's share of the community estate. That is, Owen's portion of the community included $80,000 worth of nothing, because the reimbursement claims were not proved, but Frances's portion of the community, which included not reimbursement but actual, tangible assets, was comprised of property with actual value. She thus got a higher dollar value and a higher percentage of the community estate than the trial court intended.

Because there is no evidence that the community had an $80,000 reimbursement claim against his separate estate, we sustain Owen's first issue. Because the equipment purchased by the community but used by Accu–Tech was incorrectly characterized as Owen's separate property, we sustain Owen's second issue in part. *See* Tex.R.App. P. 38.1(e) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.").

### Division of the Community Estate

 In his ninth issue, Owen asserts that the trial court abused its discretion by failing to divide the community in a just and right manner. *See* Tex. Fam.Code Ann. § 7.001 (stating that a trial court is required to divide the community estate in a just and right manner). While the division does not have to be equal, it does have to be equitable. *O'Carolan v. Hopper,* 71 S.W.3d 529, 532 (Tex.App.-Austin 2002, no pet.); *Zieba,* 928 S.W.2d at 790. The trial court's discretion to divide the community estate is broad but not unfettered; the court must have some reasonable basis for an unequal division of the property. *O'Carolan,* 71 S.W.3d at 532; *Zieba,* 928 S.W.2d at 790. The party complaining of the trial court's division must demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion. *Pletcher,* 9 S.W.3d at 446. The values of individual items "are evidentiary to the ultimate issue of whether the trial court divided the properties in a just and right manner." *Finch v. Finch,* 825 S.W.2d 218, 221 (Tex.App.-Houston [1st Dist.] 1992, no writ). When a mischaracterization has more than a minimal impact upon the trial court's division, we must remand the case to the trial court for a just and right division based upon the correct characterization of the property. *McElwee v. McElwee,* 911 S.W.2d 182, 189 (Tex.App.-Houston [1st Dist.] 1995, pet. denied).

 We have already held that the trial court erred in mischaracterizing com-

munity property as Owen's separate property. Owen claims that the trial court should have valued the equipment at its fair market value. An asset's fair market value is usually the best evidence of its value. *See Beavers v. Beavers,* 675 S.W.2d 296, 299 (Tex.App.-Dallas 1984, no writ). Owen's testimony and balance sheet placed the fair market value of the equipment at $21,650. Our review of the record reveals no evidence offered by Frances on the fair market value of the equipment alone, nor does it show the value the trial court placed on the equipment.

We have also already held that the trial court abused its discretion in awarding the community reimbursement for improvements made to Owen's Hamilton residence and to Accu Tech. The $25,0000 reimbursement for improvements to the Hamilton residence, however, was split equally between the parties; it therefore did not affect the division. The $80,000 reimbursement for improvements to Accu–Tech, as explained above, did affect the division.

■ From our review of the decree, the trial court awarded Owen roughly forty percent and Frances roughly sixty percent of a community estate worth about $416,140, including the reimbursement awards. When we deduct the reimbursement awards from the community, however, Owen received about 25% and Frances received about 75% of a community estate worth about $311,140. Even if we added $21,650, the fair value of the improperly characterized equipment according to Owen, back into the community estate solely for our calculation of the total magnitude of the errors, Owen's share of the community estate would still only be about 30% to Frances's 70%, or about $103,400 to her $229,400. Based on the record before us, we cannot say that the trial court's errors had only a minimal impact on the division. The trial court intended to award Owen about forty percent of the community; Owen only received about thirty percent.

Consequently, based on the record before us, we hold that the trial court did not divide the community estate in a just and right manner and that the division was so unjust that the trial court's actions amounted to an abuse of discretion on this ultimate issue. We sustain Owen's ninth issue.

■ In his tenth issue, Owen contends that "the errors of law made by the trial court probably caused the rendition of an improper judgment by incorrectly defining the parties['] community estate which then prevented the trial court from dividing the estate in a just and right manner." In other words, Owen contends that the trial court's abuse of discretion was harmful. *See* Tex.R.App. P. 44.1(a). We agree and sustain this issue. "Once reversible error affecting the 'just and right' division of the community estate is found, the court of appeals must remand the entire community estate for a new division." *Jacobs v. Jacobs,* 687 S.W.2d 731, 733 (Tex.1985).

Because of our disposition of this issue, we do not address Owen's complaints about the trial court's failure to grant a new trial. *See* Tex.R.App. P. 47.1.

## Conclusion

Having held that the trial court abused its discretion in dividing the community estate, we affirm the parties' divorce, but we reverse and remand this case to the trial court for a new division of the community estate.