Hamlin v. Featherston

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-078-CV

MARCIA ANN HAMLIN APPELLANT

V.

GARY LEE FEATHERSTON APPELLEE

------------

FROM THE 324TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In a single point, appellant Marcia Ann Hamlin challenges the trial court’s division of property upon her divorce from appellee Gary Lee Featherston.  Because we hold that the trial court mischaracterized some of Marcia’s separate property as community property and that this mischaracterization caused the trial court to abuse its discretion in dividing the community estate, we will affirm the parties’ divorce but reverse and remand for a new trial on the division of the community estate based on a correct characterization of the parties’ property.

I.  BACKGROUND

After five years of marriage, Marcia sued to divorce Gary on October 10, 1997.  Gary subsequently filed his own counter-petition for divorce. During their marriage, the couple lived in a house that Marcia purchased in 1992, before the couple married.  In 2001, while the divorce proceedings were pending, Marcia sold the house; the net proceeds, $48,519, were deposited in her attorney’s trust account.  Around $20,000 was withdrawn from that account during the pendency of the case for attorney’s fees and distributed equally to each party’s attorney.

After a bench trial, the trial court granted the divorce and entered a final divorce decree dividing the marital estate on December 24, 2002.  Included in the decree’s division of property was the trial court’s award of half the remaining funds in the trust account to Gary and the other half to Marcia. Marcia now appeals, contending that because the proceeds from the sale of the house were her separate property, the trial court abused its discretion in awarding half of the proceeds to Gary.  After we abated this appeal and directed the trial court to enter findings of fact and conclusions of law stating (1) the characterization of each party’s assets, liabilities, claims, and offsets on which disputed evidence had been presented and (2) the value of the community estate’s assets, liabilities, claims, and offsets on which disputed evidence had been presented, the trial court entered its findings of fact and conclusions of law on May 17, 2004.

II.  REIMBURSEMENT

The trial court’s findings of fact and conclusions of law clearly state that Marcia owned the home at issue before the marriage of the parties and that the net proceeds from the sale of the home belong to Marcia’s separate estate.  
However, the trial court effectively treated the entire amount of Marcia’s home sale proceeds, $48,519, as community property by awarding half to each party
. 
Gary contends that the trial court’s division of the home sale proceeds was proper because the community estate was entitled to reimbursement for funds spent on Marcia’s separate property.  The trial court found that Marcia owed the community estate reimbursement as follows:

26. The community estate is entitled to reimbursement of $1,200.00 for community funds expended for the construction of the aviary at 808 Park Hill, Euless, Texas.

27. The community estate is entitled to reimbursement of $8,750.00 for additional improvements made to the property at 808 Park Hill, Euless, Texas, the separate estate of MARCIA ANN HAMLIN.

28. Before the marriage of the parties, MARCIA ANN HAMLIN owned a condominium in Tennessee.

29. The community estate contributed monthly payments of $750.00 per month for the monthly payments on the Tennessee condominium, MARCIA ANN HAMLIN’S separate property.

30. The community estate is entitled to reimbursement of $48,000.00 for monthly payments made on the separate property Tennessee condominium of MARCIA ANN HAMLIN.

31. The community estate contributed $6,000.00 to the separate estate of MARCIA ANN HAMLIN when the Tennessee condominium was sold.

Thus, the trial court determined that the community estate was entitled to reimbursement on a dollar-for-dollar basis.

However, when funds from one marital estate are used to make payments on or capital improvements to the property of another marital estate, the proper measure of reimbursement is the enhancement in value of the receiving estate.  
Penick v. Penick
, 783 S.W.2d 194, 197 (Tex. 1988);
 Anderson v. Gilliland
, 684 S.W.2d 673, 675 (Tex. 1985).  This enhancement is the difference between the fair market value of the separate property before any community funds are spent and the fair market value after the payments or improvements are made during the marriage; it is not the actual cost.  
See Anderson
, 684 S.W.2d at 675.  The party claiming reimbursement bears the burden of establishing the net benefit to the payee estate.  
Vallone v. Vallone
, 644 S.W.2d 455, 459 (Tex. 1982); 
Zeptner v. Zeptner
, 111 S.W.3d 727, 737 (Tex. App.—Fort Worth 2003, no pet.) 
(op. on reh’g)
.  Accordingly, because the trial court awarded reimbursement of the actual amount of community dollars expended on Marcia’s separate properties instead of the enhancement in value of the properties, and because Gary produced no evidence 
that the community funds expended enhanced the value of Marcia’s properties, 
we agree with Marcia’s contention that 
Gary was not entitled to recover on his reimbursement claim.  

III.  ECONOMIC CONTRIBUTION

Gary further contends that the division of Marcia’s home sale proceeds was proper because the community estate is entitled to economic contribution from Marcia’s separate estate.  
A claim of economic contribution allows a marital estate that has contributed to the reduction of the principal amount of a debt secured by a lien on property owned by another marital estate to recover from the benefited estate in accordance with a formula set forth in the family code
.  
See
 
Tex. Fam. Code Ann.
 §§ 3.402-.403 (Vernon Supp. 2004-05).  
The trial court entered the following findings of fact regarding mortgage payments made on Marcia’s home:

23. Before the marriage of the parties, MARCIA ANN HAMLIN owned the property located at 808 Park Hill, Euless, Texas.

24. During the marriage, all payments made on the property at 808 Park Hill, Euless, Texas, MARCIA ANN HAMLIN’S separate property, were made with community funds.

25. The payments made by the community estate on the 808 Park Hill mortgage, the separate estate of MARCIA ANN HAMLIN, reduced the principal on the mortgage by $3,743.00.

. . . .

40. The community estate is entitled to economic contributions of $23,167.00 from the separate estate of MARCIA HAMLIN.

Marcia argues that the trial court abused its discretion in awarding part of the home sale proceeds to Gary because he neither pleaded nor proved a claim of economic contribution.

A. Pleading the Economic Contribution Claim

In his First Amended Counter-Petition for Divorce
, Gary asserted the following claims against Marcia’s separate estate:

11. Reimbursement

Counter-petitioner [Gary] requests the Court to reimburse the community estate for funds or assets expended by the community estate to benefit or enhance Counter-Respondent’s [Marcia’s] separate estate.  The community estate has not been adequately compensated for or benefited from the expenditure of those funds or assets, and a failure by the Court to allow reimbursement to the community estate will result in an unjust enrichment of Counter-Respondent’s separate estate at the expense of the community estate.

12. Equitable Interest

Counter-Petitioner requests the Court to award to the community estate an equitable interest equal to the net amount of the enhancement in value of Counter-Respondent’s separate property due to the financial contribution expended by the community estate to benefit or enhance that separate estate.

Despite these requests, Marcia contends that Gary “never asked the trial court to grant equitable relief to secure a claim for economic contribution under Texas Fa
mily Code § 3.403.”  We disagree.

Texas follows a “fair notice” pleading standard, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant.  
See Horizon/CMS Healthcare Corp. v. Auld
, 34 S.W.3d 887, 896 (Tex. 2000);
 
see also 
Tex. R. Civ. P.
 47 (requiring a pleading setting forth a claim for relief to contain a short statement of the cause of action sufficient to give fair notice of the claim involved).  A court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged.  
Boyles v. Kerr
, 855 S.W.2d 593, 601 (Tex. 1993).

Chapter 3, Subchapter E of the Texas Family Code is entitled “Equitable Interest of Community Estate in Enhanced Value of Separate Property” and provides two ways for one marital estate to recover contributions made to another marital estate: reimbursement and economic contribution
.  In two separately numbered paragraphs, Gary requested (1) reimbursement for expenditures made by the community estate to benefit Marcia’s separate estate
 and (2) an equitable interest representing the enhancement in value of Marcia’s separate property due to contributions made by the 
community estate.
  Applying these paragraphs to the statutory framework for recovery by the community estate, we conclude that Gary provided sufficient notice of his request for an equitable interest to secure a claim for economic contribution against Marcia’s separate property.
(footnote: 2) 

B. Proving the Economic Contribution Claim

The trial court found that the community estate was entitled to an economic contribution of $23,167 from Marcia’s separate estate.  Although Marcia does not specifically challenge this finding on appeal, she does argue that Gary produced no evidence of his economic contribution claim at trial.  An unchallenged finding of fact is not binding on this court if there is no evidence to support the finding.  
See McGalliard v. Kuhlmann
, 722 S.W.2d 694, 696 (Tex. 1986).  

In calculating the amount of Gary’s economic contribution claim under the statutory formula, the trial court judge apparently concluded that the contribution by Marcia’s separate estate to the equity in her separate-property home
 was $21,000.
(footnote: 3)  
See
 
Tex. Fam. Code Ann.
 § 3.403(b)(2)(B)(ii).  Marcia testified that she made this contribution to the home in the form of a $21,000 down payment when she purchased the home before she married Gary.  However, 
the amount of the contribution under this subsection is measured by determining
 (1) the net equity of the home 
as of the date of the first economic contribution to the home by the community estate
 
and (2) any contribution made by Marcia’s estate 
to the equity in the home 
after 
the date of the first economic contribution to the home by the community estate
.  
See id.
 § 3.403(b-1)(2).  There is no evidence in the record of the net equity in the home as of the date 
the community estate made its first payment on Marcia’s home; furthermore, Marcia’s $21,000 down payment was made 
before
 this date, not after it, as the statute requires.  
See id.
 § 3.403(b-1)(2)(B).  Accordingly, because the trial court used incorrect figures to calculate the amount of the community estate’s economic contribution claim, we conclude that there was no evidence supporting the trial court’s finding that the claim amounted to $23,167. 

IV.  DIVISION OF MARITAL ESTATE

Marcia further argues that because there is no evidence to support the trial court’s reimbursement and economic contribution awards to the community estate, the trial court erred in characterizing and dividing the sale proceeds of her separate property in the divorce decree
 as part of the marital estate.  
Because we have determined that the community was not entitled to reimbursement for improvements made to Marcia’s house and payments made on her condominium and that the trial court’s economic contribution calculation is unsupported by the evidence, we conclude that the trial court erroneously treated Marcia’s separate property funds as community property.

A characterization error does not require automatic reversal, however; instead, we reverse only if the characterization error caused the trial court to abuse its discretion.  
See Boyd v. Boyd
, 
131 S.W.3d 605, 617 (Tex. App.—Fort Worth 2004, no pet.)
.  If the mischaracterization is of such magnitude that it affects the just and right division of the community estate, we must remand the entire case to the trial court for a just and right division based upon the correct characterization of the property.  
Zeptner
, 111 S.W.3d at 740.  On the other hand, 
if the mischaracterization has only a de minimus effect on the trial court’s division of the community estate, then the trial court did not abuse its discretion. 
 Id.

The trial court’s divorce decree and findings of fact and conclusions of law reveal that the trial court awarded Gary thirty-three percent and Marcia sixty-seven percent of a community estate worth about $
362,669
.
(footnote: 4),
(footnote: 5)  When we deduct Marcia’s home sale proceeds erroneously treated as community property, Gary received about thirty-eight percent of a community estate worth $314,150.
(footnote: 6)  The divorce decree indicates that the trial court intended to award Marcia sixty-seven percent of the community estate and that the trial court determined this to be a “just and right” award.  However, because of the trial court’s characterization error, Marcia received not the “just and right” sixty-seven percent but something less: sixty-two percent of the community estate.  Based on the record before us, we cannot say that the trial court’s error had only a minimal impact on the division.  
See McElwee v. McElwee
, 
911 S.W.2d 182, 190 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (
holding that characterization error was not de minimus when, because of a $45,000 characterization error
, the trial court actually awarded husband three percent less of the community estate than it had intended to award him in the divorce decree).  Accordingly, we must hold that the trial court’s decree did not divide the community estate in a just and right manner.
(footnote: 7)  
See Boyd
, 131 S.W.3d at 618; 
 Zeptner
, 111 S.W.3d at 741
.  We sustain Marcia’s point on appeal.
(footnote: 8)
 We do not suggest that, under the facts of this case, the trial court judge did not have the power to award Marcia sixty-two percent, rather than sixty-seven percent, of the community estate.  
The trial court, in its discretion, might decide that the division of property in the divorce decree is still a just and right division of the community estate even though Marcia actually received five percent less of the community estate than the trial court intended to award her.  However, we may not make that determination; only the trial court has the power to make a just and right division of the community estate.  
See
 
Tex. Fam. Code Ann.
 § 7.001 (Vernon 1998); 
Jacobs v. Jacobs
, 687 S.W.2d 731, 733 (Tex. 1985) (stating that an appellate court may not make a new division of the parties’ estate); 
McKnight v. McKnight
, 543 S.W.2d 863, 865 (Tex. 1976) (stating that appellate courts “do not have the authority to render judgments dividing the property of the spouses”).

Therefore, having held that the trial court’s mischaracterization of Marcia’s separate property caused the trial court to abuse its discretion in dividing the community estate, we affirm the parties’ divorce but reverse the portion of the judgment dividing the parties’ estate and remand the case for a new trial on the division of the community estate that is based on a correct characterization of the property as described in this opinion.

BOB MCCOY

JUSTICE

PANEL A: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DELIVERED
:
  April 7, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Gary’s counter-petition refers to language of the pre-September 1, 2001 version of the family code, which provided that the use of community property to discharge debt on a spouse’s separate property created an “equitable interest” of the community estate in the separate property and that this equitable interest was calculated with reference to the “enhanced value” of the separate property.  Act of May 21, 1999, 76th Leg., R.S., ch. 692, § 2, 1999 Tex. Gen. Laws 3292, 3292-93 (amended 2001) (current version at 
Tex. Fam. Code Ann.
 § 3.401-.410 (Vernon Supp. 2004-05)).  Gary’s counter-petition was filed
 November 30, 2001, after this statute was amended with the current “economic contribution” language.  Even though Gary’s pleading used language from the prior version of the statute, his request for an equitable interest in the separate estate due to the “enhancement in value” caused by the community’s financial contribution to the separate estate was sufficient to give adequate and fair notice to Marcia of his intent to seek an economic contribution claim.  
See Auld
, 34 S.W.3d at 897.  

3:
As demonstrated in Gary’s brief, the $23,167 figure was calculated as follows: $48,519 X [19,193 ÷ (19,193 + 21,000)] = $23,167, where $48,519 is the equity in the home on the date of its sale; $19,193 is the reduction in principal debt, $8,823, plus the total dollar amount of capital improvements to the property, $10,370; and $21,000 is the 
contribution by Marcia’s estate to the equity in the home.  
We note that, contrary to these figures, the trial court actually concluded in its findings of fact that the reduction in principal was $3,743 (not $8,823) and that the capital improvements totaled $9,950 (not $10,370).

4:
The trial court’s findings of fact assign the following values to the parties’ community property: (1) community portion of Gary’s 401(k) - $92,000; (2) a bird - $150; (3) checking account in Gary’s name - $3,000; (4) bank account in Marcia’s name - $20,000; and (5) car in Marcia’s possession - $12,000.  Undisputed evidence at trial established the value of (6) the 401(k) in Marcia’s name at approximately $48,000 and (7) the retirement account in Marcia’s name at $139,000; the court’s conclusions of law indicate that both these accounts were community property.  With Marcia’s $48,519 home sale proceeds, the total value of the community estate divided by the trial court was $362,669. 

The trial court awarded Gary his 401(k), checking account, the bird, and $24,259.55 from the home sale proceeds for a total of $119,409.55, or thirty-three percent, of the community estate; Marcia received her bank account, car, 401(k), retirement account, and $24,259.56 from the home sale proceeds for a total of $243,259.55, or sixty-seven percent, of the community estate.

5:
We recognize that the divorce decree also awards the parties the household and personal items that each had in his or her possession.  The findings of fact state that Marcia possessed eighty percent and Gary possessed twenty percent of the community’s personal possessions; however, the court does not assign a value to these possessions.  Because we 
may not make findings of fact, 
see Zeptner
, 111 S.W.3d at 734, we are unable to include these in the valuation of the community estate.

6:
Properly characterized, the total value of the parties’ community property is $
314,150
.  It consists of the community portion of Gary’s 401(k), the bird, the bank accounts, the car in Marcia’s possession, Marcia’s 401(k), and Marcia’s retirement account.

7:
Gary argues that any characterization error was harmless because a portion of Marcia’s retirement account was community property, so the trial court could have awarded him a portion of that retirement account (instead of the home sale proceeds) to compensate him for his reimbursement claim. However, this argument fails because we have determined that Gary was not entitled to recover on his reimbursement claim.

8:
Marcia also argues that the trial court abused its discretion by failing to confirm the parties’ separate property.  Marcia cites no legal authority for this contention, so we will not address it.  
See
 
Tex. R. App. P.
 38.1.  We note, however, that the trial court specifies in its conclusions of law the property owned by each party’s separate estate.