**Opinion issued November 26, 2013**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-12-00946-CV**

———————————

**REYNA ARACELY JOYA, Appellant**

**V.**

**DAVID JOYA, Appellee**

———

**On Appeal from the 311th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-74091**

———

**MEMORANDUM OPINION**

In this case, the trial court entered a final decree of divorce, ending the marriage of appellant, Reyna Aracely Joya, and appellee, David Joya. In four issues on appeal, Reyna contends that the trial court erred in: (1) ordering a

division of the marital estate that was not just and right; (2) ordering a disproportionate division of the marital estate without a reasonable basis; (3) failing to reconsider its unequal division; and (4) failing to file findings of fact and conclusions of law.

We affirm.

## Background

David and Reyna were married in Harris County on April 2, 1997, and ceased living together as husband and wife in October 2008. The parties have two minor children, but Reyna has not raised any issues on appeal concerning the children.

David filed for divorce on November 9, 2010, alleging, as grounds for divorce, that Reyna was guilty of cruel treatment "of a nature that renders further living together insupportable." He further alleged that the trial court should award him a disproportionate share of the marital estate for reasons including "fault in the breakup of the marriage," "fraud on the community," and "constructive fraud committed by a spouse." Reyna counter-petitioned for divorce on January 3, 2011, and asserted insupportability as grounds for divorce.

David, who was forty-six years old at the time of trial, testified that he used to own a sole proprietorship called DJ General Construction and that he had worked as a general contractor for nearly thirty years, twenty of those years on his

own.  Reyna, who was forty-eight years old at the time of trial, testified that she completed five years of medical school in El Salvador, where she was born and raised, but did not finish the program.  The parties agreed that Reyna used to help David with his business, primarily with accounting matters.  She also testified that, while the parties were living together as husband and wife, she worked approximately six hours a week as a medical technologist for the Harris County Hospital District.

In May 2007, David was severely injured in an accident in a friend's swimming pool.  He underwent multiple surgeries and spent months in intensive care and hospice care.  David is completely paralyzed from the waist down and mostly paralyzed from the neck down, although he has limited use of his hands. David received a $167,000 personal injury settlement as a result of the accident, and he testified that he used the money for his living expenses and that, as of the time of trial, he had less than $20,000 of the settlement remaining.  He testified that his only current income is his monthly Social Security disability checks and rental income from one of the properties that he and Reyna own.  His brother helps him pay the mortgage on the property at which he is currently living and his other bills.  David testified that he has therapy sessions twice a week, which are not covered by his Medicare coverage, and that his mother pays between $90 and $100 for each session.  His mother also pays his caretaker $260 per week.

3

David testified that Reyna did not get along with his family and was verbally abusive to his son from his prior marriage. He also testified that, after his accident, Reyna tried to prevent his family members from visiting him in the hospital and at their home. David stated that while Reyna was caring for him at home after his accident, she tied his hands with rope on at least five occasions. He testified that she hit him "[m]any, many times," that Harris County Adult Protective Services was called to investigate, and that she was verbally abusive to him. David left the marital home in October 2008 to live with his mother, who has been caring for him ever since, after Reyna told him that she did not want to take care of him anymore. He stated that, when he left, Reyna let him take his bed, which had been modified to meet his health needs, his wheelchair, and the clothes that he was wearing. She kept all of his other clothes and other belongings. He testified that he had occasionally sent presents to his children after he moved, but some of those presents had been returned to him.

David testified that he owns five pieces of real property in the Houston area, one of which, located in Sugar Land, he acquired before he married Reyna. He stated that Reyna bought a house in Katy with David's funds, but without his consent. He further testified that Reyna had her own bank account, that he did not have control over that account, and that Reyna "acquired things that [he] didn't know about." He also testified that he kept a safe in the master closet of one of

4

their properties and that this box had contained $150,000 just prior to his accident. He stated that, because he has been either bedridden or wheelchair-bound since his accident, there was no way that he could have gone into that closet and removed the funds in that safe. He also stated that he was owed approximately $100,000 on construction jobs at the time of his accident and that he did not collect any of that money. When asked if he knew who did collect that money, he stated, "I would say Reyna."

The trial court signed a final decree of divorce on July 27, 2012. In the marital estate division, the trial court awarded David, among other things, three vehicles, two trailers, the tools and equipment that he had used in his construction business, the remaining funds from his personal injury settlement, any funds due from his construction business, and four pieces of real property, including the property located in Sugar Land and the property at which he was currently living. The trial court awarded Reyna, among other things, two vehicles, a time share, a promissory note worth $50,000, two lots in El Salvador valued at $20,000, and the real property in Katy, at which she lived with the children. The decree split Reyna's credit card debt equally between the parties.[1]

---

[1] The trial court filed its rendition, which included a division of the marital estate, on February 15, 2012. This rendition is not included in the record. Reyna filed a motion for reconsideration in response to the rendition. In this motion, she argued that the division of the marital estate was inequitable because she received $148,000 and David received $781,000. She further argued, in this motion, that

5

Reyna filed a request for findings of fact and conclusions of law and a notice of past due findings and conclusions. The trial court did not file findings and conclusions. This appeal followed.

## Disproportionate Division of Marital Estate

In her first issue, Reyna contends that the trial court erred in dividing the marital estate in a manner that was not just and right. In her second issue, she contends that the trial court erred in rendering an unequal division of the marital estate without a reasonable basis for the unequal division. In her third issue, she contends that the trial court erred in not reconsidering its division of the marital estate. We consider these issues together.

### A.    *Standard of Review*

In a decree of divorce, the trial court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of the parties and any children of the marriage. TEX. FAM. CODE ANN. § 7.001 (Vernon 2006); *Hailey v Hailey*, 176 S.W.3d 374, 380 (Tex. App.—

---

she would actually receive only $53,000, because the two lots in El Salvador, the $50,000 note, and the time share, valued at $25,000, were "worthless" and had "no value" to her. She argued that the lots in El Salvador had no value to her because David had purchased the lots but put the title in his friend's name, and she would have to sue that friend to get the title changed to reflect her ownership. She further argued that she did not "have the resources to use the time share" and that the family friend who owed the Joyas $50,000 had advised Reyna that "she cannot and will not pay this debt." None of these arguments were supported by evidence presented at trial.

6

Houston [1st Dist.] 2004, no pet.). Section 7.001 vests the trial court with broad discretion to effect a just and right division of the community estate, and we will not reverse that division unless the complaining party demonstrates that the trial court clearly abused its discretion. *Hailey*, 176 S.W.3d at 380 (citing *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981) and *Rafferty v. Finstad*, 903 S.W.2d 374, 377 (Tex. App.—Houston [1st Dist.] 1995, writ denied)). The trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). A trial court does not abuse its discretion if some evidence of a substantive and probative character supports its decision or if reasonable minds could differ as to the result. *Smith v. Smith*, 115 S.W.3d 303, 305 (Tex. App.—Corpus Christi 2003, no pet.); *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *see also Wilson v. Wilson*, 132 S.W.3d 533, 537 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) ("If the division of marital property lacks sufficient evidence in the record to support it, then the trial court's division is an abuse of discretion."). When conducting a bench trial in a divorce case, the trial court has the opportunity to "observe the parties, determine their credibility, and evaluate their needs and potential, both social and economic." *Hailey*, 176 S.W.3d at 382 (citing *Murff*, 615 S.W.2d at 700). The trial court "is empowered to apply its understanding and experience,"

7

and we recognize that "mathematical precision in dividing property in a divorce is usually not possible." *Id.* We presume that the trial court properly exercised its discretion in dividing the marital estate. *Id.* at 380 (citing *Murff*, 615 S.W.2d at 699).

### B. *Disproportionate Division*

The trial court may order an unequal division of the marital estate when a reasonable basis exists for granting that relief. *Id.* (citing *Robles v. Robles*, 965 S.W.2d 605, 621 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)). The division must not be so disproportionate as to be inequitable, and the circumstances must justify awarding more than one half of the marital estate to one party. *Id.* (citing *Patt v. Patt*, 689 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1985, no writ)). "The party who complains of the trial court's division of property must demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion." *Loaiza v. Loaiza*, 130 S.W.3d 894, 899 (Tex. App.—Fort Worth 2004, no pet.); *Zeptner v. Zeptner*, 111 S.W.3d 727, 734 (Tex. App.—Fort Worth 2003, no pet.).

"Relevant factors in the division of the marital estate include (1) the education of the parties, (2) their relative earning capacities, (3) the size of their separate estates, and (4) the nature of the community property." *Hailey*, 176 S.W.3d at 380. In dividing the marital estate, the trial court may consider several

8

other factors including, if pleaded, the fault of the parties. *See Twyman v. Twyman*, 855 S.W.2d 619, 625 (Tex. 1993); *Alsenz v. Alsenz*, 101 S.W.3d 648, 655 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (considering evidence that husband verbally and physically abused wife in upholding disproportionate division of marital estate in favor of wife). The court may also consider "such factors as the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature [of] the property." *Twyman*, 855 S.W.2d at 625 (quoting *Murff*, 615 S.W.2d at 699); *Massey v. Massey*, 807 S.W.2d 391, 398 (Tex. App.—Houston [1st Dist.] 1991) (listing "education, respective earning power, business and employment opportunities, physical health, probable future need for support, the award of custody, the size of the parties' separate estates, the length of the marriage and fault in its breakup" as factors court may consider), writ denied, 867 S.W.2d 766 (Tex. 1993). Courts may also consider fraud on the community in its division of the estate, and this may justify an unequal division of property. *Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998); *Loaiza*, 130 S.W.3d at 900 (noting that "waste of community assets" is factor to be considered in dividing marital estate).

The evidence presented at trial reflects that, as a result of a severe injury, David is partially paralyzed and is wheelchair-bound. He can no longer work as a general contractor, a job at which he had nearly thirty years' experience, and he must rely solely on Social Security disability benefits and income from a rental property for his monthly income. On the other hand, there is no indication in the record that Reyna has any health problems that affect her ability to work. *See Twyman*, 855 S.W.2d at 625 (listing spouses' capacities and abilities and relative physical conditions as relevant factors in dividing marital estate). Reyna completed five years of medical school in El Salvador and has experience working in accounting and as a medical technologist. *See id.* (listing business opportunities and education as relevant factors); *Hailey*, 176 S.W.3d at 380 (considering education and relative earning capacity); *Massey*, 807 S.W.2d at 398 (listing education, respective earning power, and business and employment opportunities as considerations).

David's physical condition is such that he will be paralyzed for the rest of his life and will need continuing care. He testified that his mother currently pays $90 to $100 per session with a therapist, who works with David twice a week, and $260 per week for a caretaker. Reyna has demonstrated no comparable need for future support either on her own behalf or on behalf of their children. *See Massey*,

807 S.W.2d at 398 (listing probable need for future support as relevant consideration).

David also presented evidence that Reyna was both physically and verbally abusive to him after his accident, occasionally restraining his hands, hitting him, and calling him demeaning names. *See Twyman*, 855 S.W.2d at 625 (stating that fault of parties, if pleaded, may be considered); *Alsenz*, 101 S.W.3d at 655 (considering evidence that husband verbally and physically abused wife in upholding disproportionate award in her favor). He also testified that she attempted to restrict his family's access to him after his accident and that she was verbally abusive to his son from his first marriage. He testified that Reyna had used community funds to purchase her current house without his consent. He also stated that he believed Reyna had taken funds that he had stored in a safe and had collected funds owed to his construction business but had not shared those funds with him. *See Schlueter*, 975 S.W.2d at 588 (holding that fraud on community may justify unequal property division).

As the fact finder, the trial court had the opportunity to "observe the parties, determine their credibility, and evaluate their needs and potential, both social and economic." *Hailey*, 176 S.W.3d at 382. We conclude that evidence in the record supports the trial court's disproportionate award of marital property to David. *See Smith*, 115 S.W.3d at 305 (holding that trial court does not abuse its discretion if

11

some evidence of substantive and probative character supports its decision). We hold that the trial court did not abuse its discretion in awarding a disproportionate amount of the parties' marital estate to David. *See Hailey*, 176 S.W.3d at 380 (holding that we presume that trial court properly exercised its discretion in dividing marital estate); *Loaiza*, 130 S.W.3d at 899 (holding that complaining party must demonstrate, based on evidence in record, that division was so unjust trial court abused its discretion). Because we hold that the trial court did not abuse its discretion in dividing the parties' marital estate, we also hold that the trial court did not err in denying Reyna's motion for reconsideration.

We overrule Reyna's first, second, and third issues.[2]

---

[2] We also note that, in her appellate brief, Reyna makes no effort to address any of the factors that courts have held to be relevant in deciding whether the trial court properly awarded a disproportionate share of the martial estate to one party, nor does she cite any evidence presented at trial that supports these factors. She argues that the trial court awarded $53,000 to her and $781,000 to David in its final divorce decree, but she cites no basis for how she arrives at these valuation numbers. At trial, she offered estimates concerning the value of the parties' real properties, but she also admitted that these estimates were merely guesses on her part. Her motion for reconsideration, which is the only place in the record in which she set out the estimated value of the property awarded to each party, listed a total award of $148,000 to her, although she argued that that amount should really be reduced to $53,000, because the El Salvador lots, the $50,000 note, and the time share are "worthless" and have "no value" to her. She does not raise this same argument on appeal, aside from asserting that the divorce decree only awards $53,000 to her. Reyna has not established that the trial court abused its discretion in making a disproportionate award of the marital estate, as it was her burden to do. *See Loaiza v. Loaiza*, 130 S.W.3d 894, 899 (Tex. App.—Fort Worth 2004, no pet.) ("The party who complains of the trial court's division of property must demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion."); *see also Hailey v. Hailey*, 176 S.W.3d 374, 380

12

**Failure to File Findings of Fact and Conclusions of Law**

Finally, in her fourth issue, Reyna contends that the trial court erred in failing to file findings of fact and conclusions of law.

Texas Rule of Civil Procedure 297 requires a trial court to file findings of fact and conclusions of law after a timely request by a party. *See* TEX. R. CIV. P. 297. If the court fails to file timely findings and conclusions, the party making the request must, within thirty days of filing the original request, file a notice of past due findings and conclusions. *Id.* "Because the trial court's duty to file findings and conclusions is mandatory, the failure to respond when all requests have been properly made is presumed harmful . . . ." *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989). However, a trial court's failure to file findings and conclusions is not harmful if "the record before the appellate court affirmatively shows that the complaining party suffered no injury." *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam) (holding that trial court's failure to file findings and conclusions concerning division of marital estate was not harmful error "because there was ample evidence in the record to support the judgment").

We have already set out the evidence in the record that supports the trial court's disproportionate award of the marital estate to David. Thus, because, as in *Tenery*, there is ample evidence in the record to support the judgment of the trial

(Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding that we presume trial court properly exercised its discretion in dividing marital estate).

13

court, we hold that the trial court's failure to file findings and conclusions does not constitute reversible error. *See id.*; *see also* TEX. R. APP. P. 44.1(a) (providing that error is reversible if it probably caused rendition of improper judgment or probably prevented appellant from properly presenting case to appellate court).

We overrule Reyna's fourth issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

14