COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT WORTH

 

                                        NO.
2-05-435-CV

 

LARRY RAY TAYLOR                                                           APPELLANT

 

                                                   V.

 

LULA M. TAYLOR                                                                  APPELLEE

 

                                              ------------

 

           FROM
THE 231ST DISTRICT
 COURT OF
 TARRANT
 COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Larry Ray Taylor
appeals the property division in the trial court=s decree granting appellee Lula M. Taylor a divorce from appellant.[2]  Appellant brings forty-four issues for our
review.  We affirm.








Background

Appellant
and appellee were married on May 12, 1986. 
They did not have any children together. 
The parties owned two tracts of real property in Fort
 Worth, Tarrant County,
 Texas that made up the bulk of
the property to be divided:  (1) 4941 Harlem Street
;
and (2) 3513 Chimney Rock.  During the
marriage, the parties lived at the Chimney Rock property, which appellee had
acquired before the marriage.  They used
the Harlem Street
property as rental property. 

On October 29, 1986, appellee
executed a general warranty deed transferring a one-half interest in the
Chimney Rock property to appellant. 
Appellee testified at trial that her sole purpose in executing the deed
was for appellant=s
convenience in dealing with subcontractors working on the property to repair
fire damage.  According to appellee, she
did so at appellant=s
request.  She testified that it was not
her intention to make a gift to him of any of the property at that time. 

Appellee and appellant were
separated in August 1999 when appellant was incarcerated for sexual assault of
a child and sentenced to ten years= confinement.  Appellee filed
for divorce on November 17, 2003 alleging insupportability, cruel treatment,
conviction of a felony and incarceration, and abandonment as grounds for
divorce. 








In 2004, while the divorce
was pending, appellee sold the Harlem
 Street property with the trial court=s approval and in accordance with the trial court=s order.  Appellee=s attorney held the sale proceeds in a trust account pending the final
decree of divorce, and the trial court authorized appellee=s attorney and, later, appellant=s attorney to withdraw funds from the account for attorneys= fees.  The remainder of the
parties= property consisted of both personal property and household items,
three motor vehicles, two retirement savings accounts held by appellee, one
life insurance policy insuring appellee=s life, and a burial policy in appellee=s name. 

The trial court granted the
divorce on November 14, 2005 and signed the final decree on February 9,
2006.  Appellant appeals the property
division.

Chimney Rock Property








Appellant contends in his fourth,
thirty-third, thirty-fourth, thirty-sixth, and thirty-seventh issues that the
trial court abused its discretion by awarding the Chimney Rock property to
appellee as her separate property based on its finding that appellant
judicially admitted that the Chimney Rock property was appellee=s separate property.  In his
fifth through sixteenth, twenty-ninth through thirty-second, thirty-fifth,
thirty-ninth through forty-first, and forty-third through forty-fourth issues,
he contends that the trial court erred by voiding the October 29, 1986 deed
purporting to give him a one-half interest in the property and by hearing parol
evidence regarding appellee=s intent in executing the deed. 

In its findings of fact and
conclusions of law, the trial court made the following finding:

Before the marriage of the parties, Lula Taylor
owned the following property with the values shown:  3513 Chimney Rock, Arlington, Texas.  Respondent Larry Taylor induced Petitioner
Lula Taylor to sign a warranty deed conveying a one-half interest in and to the
separate property of Lula Taylor, to enable Larry Taylor to negotiate with, and
deal with contractors and insurance adjusters, following an insured loss to the
property.  Larry Taylor admitted in Court
pleadings, discovery and in prior testimony in Court hearings, in this cause,
that the property was the separate property of Lula Taylor.  The Court further found that the conveyance
of the one-half interest was meant only to facilitate the repairs to the
property, and that the parties expressed no actual intent to convey any
ownership to Larry Taylor. 

 








AAssertions
of fact, not [pled] in the alternative, in the live pleadings of a party are
regarded as formal judicial admissions.@  Holy Cross Church of God in
Christ v. Wolf, 44 S.W.3d 562, 568 (Tex. 2001) (quoting Houston First
Am. Sav. v. Musik, 650 S.W.2d 764, 767 (Tex. 1983)); Commercial
Structures & Interiors, Inc. v. Liberty Educ. Ministries, Inc., 192
S.W.3d 827, 835 (Tex. App.CFort Worth 2006, no pet.).  A
judicial admission is a formal waiver of proof that dispenses with the
production of evidence on an issue.  Lee v. Lee, 43 S.W.3d 636, 641 (Tex. App.CFort Worth 2001, no pet.).  A
judicially admitted fact is established as a matter of law, and the admitting
party may not dispute it or introduce evidence contrary to it.  Peck v. Peck, 172 S.W.3d 26, 31 (Tex.
App.CDallas 2005, pet. denied); Dutton v. Dutton, 18 S.W.3d 849, 853
(Tex. App.CEastland
2000, pet. denied); Roosevelt v. Roosevelt, 699 S.W.2d 372, 374 (Tex. App.CEl Paso 1985, writ dism=d).  

This rule is based on the
public policy that it would be absurd and manifestly unjust to permit a party
to recover after he has sworn himself out of court by a clear and unequivocal
statement.  U.S. Fid. & Guar. Co.
v. Carr, 242 S.W.2d 224, 229 (Tex. Civ. App.CSan Antonio 1951, writ ref=d); Peck, 172 S.W.3d at 31; Lee, 43 S.W.3d at 641.  Five conditions must have occurred for a
party=s admission to be conclusive against him:  (1) the declaration relied upon must have
been made in the course of a judicial proceeding; (2) the declaration was
contrary to an essential fact embraced in the theory of recovery or defense
asserted by the party; (3) the statement was deliberate, clear, and
unequivocal; (4) giving conclusive effect to the declaration would not run
contrary to public policy; and (5) the declaration related to a fact upon which
a judgment for the opposing party was based. 
Carr, 242 S.W.2d at 229; Peck, 172 S.W.3d at 31; Lee,
43 S.W.3d at 641-42.













Applying the elements
required to establish a judicial admission to the case at hand, it is evident
that the trial court correctly concluded that appellant judicially admitted
that the Chimney Rock property was appellee=s separate property and that appellee was barred from introducing
evidence that he and appellee held the property jointly as tenants in
common.  First, appellant=s admissions were made during the course of a judicial
proceeding:  in at least one pretrial
hearing,[3]
in his sworn inventory and appraisement,[4]
and in his response to interrogatories. 
Moreover, a majority of his pretrial discovery requests were aimed at
matters essential to his claim for reimbursement and economic contribution to
the community estate for expenditures made on the Chimney Rock property.  See Tex.
Fam. Code Ann. ' 3.402(a)
(Vernon 2006) (providing in pertinent part that A>economic contribution= is the dollar amount of:  (1)
the reduction of the principal amount of a debt secured by a lien on property
owned before marriage, to the extent the debt existed at the time of marriage@); Vallone v. Vallone, 644 S.W.2d 455, 459 (Tex. 1982) (holding
that right of reimbursement arises when Acommunity time, talent and labor are utilized to benefit and enhance a
spouse=s separate estate, beyond whatever care, attention, and expenditure
are necessary for the proper maintenance and preservation of the separate
estate, without the community receiving adequate compensation@).








Second, the admission is
contrary to an essential fact asserted by appellant at trial:  that the property was held by appellant and
appellee jointly as tenants in common and, therefore, that he was entitled to a
one-half undivided interest as his separate property.  It was not until trial that Appellant
asserted he was previously mistaken about the property being appellee=s separate property.  He claimed
that he only made the statements based on the fact that she owned the property
before they were married.  However, when
appellant made the prior inconsistent statements, they were deliberate, clear,
and unequivocal.  The inventory and
interrogatory responses, for instance, were sworn before a notary public.  As to appellant=s argument that the statements were made while he was acting pro se,[5]
appellant=s Amended
Original Counterpetition for Divorce, filed by appellant=s counsel approximately one month before trial, restates appellant=s claim for reimbursement and economic contribution to the community
estate for Afunds or
assets expended by the community estate for payment of unsecured liabilities of
[appellee=s] separate
estate.@  This claim is not pled in the
alternative.

The fourth element is
satisfied in that giving effect to the admissions of the separate character of
the property would be consistent with the public policy that a party should not
be permitted to recover when he has sworn himself out of court by a clear and
unequivocal statement.  Appellant should
not be allowed to maintain consistently under oath that property belonged to
appellee as her separate property, then argue at trial that he owned half as
his separate property.  And, finally, the
admission supports the judgment in favor of appellee.








Because appellant judicially
admitted that the property was appellee=s separate property, the trial court properly barred him from offering
conflicting evidence, such as the deed, and from disputing the fact admitted.  See Horizon/CMS Healthcare Corp. v. Auld,
34 S.W.3d 887, 905 (Tex.
2000).  We overrule appellant=s fourth, thirty-third, thirty-fourth, thirty-sixth, and
thirty-seventh issues.  Because the trial
court=s award of the Chimney Rock property to appellee is supported by
appellant=s judicial
admission, we need not address appellant=s issues complaining about the trial court=s finding and conclusion voiding the deed to appellant.  See Tex.
R. App. P. 47.1; Everett v. TK-Taito, L.L.C., 178 S.W.3d 844, 851
n.5 (Tex. App.CFort Worth
2005, no pet.).

Reimbursement and Economic Contribution








In his seventeenth, thirty-eighth, and forty-second issues,
appellant argues that the trial court abused its discretion by finding that he
did not present sufficient evidence to support his claims for reimbursement and
economic contribution[6]
for funds expended by the community estate on the Chimney Rock property.  At trial, appellant agreed with his counsel
that he was seeking reimbursement Afor either [his]
time, toil, and labor or economic contributions made by the community estate to
pay for that house [the Chimney Rock property] or do work on that house during
the marriage.@ 

Economic Contribution








The Texas Family Code provides that A[a] marital estate
that makes an economic contribution to property owned by another marital estate
has a claim for economic contribution with respect to the benefitted estate.@  Tex.
Fam. Code Ann. ' 3.403(a); Boyd v. Boyd, 131 S.W.3d
605, 613 (Tex.
App.CFort Worth 2004,
no pet.).  The amount of a claim for
economic contribution is derived by multiplying the equity in the benefitted
property on the date of the divorce by a fraction.  Tex.
Fam. Code Ann. ' 3.403(b); Boyd, 131 S.W.3d at
613.  The fraction=s numerator is the
amount of the economic contribution by the contributing estate and its
denominator is equal to the sum of that same economic contribution, the equity
in the benefitted property on the date of the marriage, and any economic
contribution to the benefitted property by the benefitted estate during the
marriage.  Tex. Fam. Code Ann. ' 3.403(b); Boyd,
131 S.W.3d at 613.  A spouse who seeks
economic contribution must bring forth sufficient evidence for the fact-finder
to determine the enhancement value to the benefitted estate.  Moroch v. Collins, 174 S.W.3d 849, 856
(Tex. App.CDallas 2005, pet. denied); Hailey v.
Hailey, 176 S.W.3d 374, 388 (Tex. App.CHouston [1st
Dist.] 2004, no pet.); Boyd, 131 S.W.3d at 613.

A party may bring a claim for reimbursement of payments by
one marital estate to satisfy unsecured liabilities of another marital estate
or for time, toil, and talent expended on the other marital estate.  Tex.
Fam. Code Ann. ' 3.408(b)(1); Raymond v. Raymond, 190 S.W.3d 77, 83
(Tex. App.CHouston [1st
Dist.] 2005, no pet.); Alsenz v. Alsenz, 101 S.W.3d 648, 654 (Tex. App.CHouston [1st Dist.] 2003, pet. denied). 
A trial court resolves claims for reimbursement in its discretion in
accordance with equitable principles.  Tex. Fam. Code Ann. ' 3.408(c), ' 7.007(b) (Vernon 2006); Vallone, 644 S.W.2d at 658; Zeptner
v. Zeptner, 111 S.W.3d 727, 735 (Tex.
App.CFort Worth 2003, no pet.).  A
party claiming a right of reimbursement must plead and prove that the
expenditures were made and that they are reimbursable.  Vallone, 644 S.W.2d at 459; Hailey,
176 S.W.3d at 384.








Appellant testified at trial that he helped pay the
mortgage on the house during the parties= marriage before
he went to prison.  Although he testified
that the Chimney Rock property was appraised by the Tarrant Appraisal District
(TAD) at $97,900[7]
and that it was insured for $126,000, he did not introduce any evidence
corroborating this testimony.  Moreover,
although he asserted in a handwritten exhibit filed with the court that the
value of the Chimney Rock property when the parties were married was $62,606,
he offered no documentation supporting this assertion, nor for his assertion in
the same document that the value of the property in January 2004 was $94,000.  Appellee testified that the value of the
house had declined since 1986 and was approximately $85,000.  Accordingly, we conclude and hold that the
trial court did not abuse its discretion by denying appellant=s economic
contribution claim because there is no evidence that would enable the
fact-finder to determine the enhanced value of the Chimney Rock property in
accordance with the formula set forth in section 3.403(b).  See Rogers v. Foxworth, 214 S.W.3d
196, 199 (Tex. App.CTyler 2007, no pet.); In re Marriage of
Morris, 123 S.W.3d 864, 871 n.4 (Tex. App.CTexarkana 2003, no
pet.).








Appellant also testified that he contributed his services
as a contractor in rebuilding the Chimney Rock property Abigger@ and Abetter@ after a fire
destroyed the property.  He further
testified that for his contractor=s fee he was
entitled to twenty percent of the $160,790.38 paid by Allstate on the Chimney
Rock homeowner=s policy in 1986, 1987, and 1990 and
twenty percent of $17,370.60 that Allstate paid in 1992 for theft and for wind
and hail damage.[8]
In addition, he stated that around 1990, he and appellee took out a $20,000
ten-year loan in his name to install a swimming pool.  His reimbursement claim also encompassed funds
he allegedly paid for taxes, insurance, interest and principal on the house
mortgage and pool note, and living expenses.

Appellee disputed the extent of appellant=s work and time
expended in working on the Chimney Rock property after the fire.  She also stated that a large amount of the
payments from Allstate was for the parties= personal property
losses; appellant did not offer any evidence showing what part of those
payments was attributable to the house or its contents.  Appellant never introduced any financial
records showing amounts he paid on the parties= unsecured
liabilities.  Therefore, we conclude and
hold that the trial court did not abuse its discretion by denying appellant=s reimbursement
claim.  See Zeptner, 111
S.W.3d at 736-37.  We overrule appellant=s seventeenth,
thirty-eighth, and forty-second issues.








 

Bill of Exception and Bystander=s Bills

In his twenty-third issue, appellant contends that the
trial court abused its discretion by refusing to admit evidence of appellee=s then-current job
and 401(k) or other benefits she may have been entitled to for that job.  At trial in November 2005, appellee testified
that she had left her job at Kimberly Clark that July.  When appellant=s counsel asked
appellee where she was currently working, she was hesitant to answer.  Her counsel explained to the trial court that
appellee had left her previous job because appellant Awhile incarcerated
has had a history of calling her employer and harassing her and her employer.@  Appellee=s counsel also
stated that A[i]f there=s a question of
does she have any benefits, any retirement that she=s accumulated in
the last few weeks, we will represent to the Court there is none.@  [Emphasis added.] 

The court stated that it would either require appellee to
testify or find some other way to satisfy appellant that appellee had not
accrued any benefits.  Appellee then
testified that she had been working at her new job since July 2005.  The matter was never mentioned again on the
record.








On January 17, 2006, appellant filed a bill of exception in
which he appears to complain about the trial court=s failure to rule
on some of his motions.  See Tex. R. App. P. 33.2.  He later filed an objection to the trial
court=s failure to take
action on the bill in accordance with rule 33.2(c)(2).  Tex.
R. App. P. 33.2(c)(2).  In March
2006, he filed bystander=s bills signed by fellow inmates in which
they attested to observing the matters to which the bill of exception
pertained.  See Tex. R. App. P. 33.2(c)(3).  Their affidavits complain about the trial
court=s refusal to allow
appellee to testify about her new job and possible benefits, in addition to
other matters, such as the refusal of appellant=s counsel to
return his file and documents used as trial court exhibits.








Even though appellant filed a bill of exception, his
argument fails because he has not shown what the missing evidence is, nor has
he shown that any missing evidence was actually presented to the trial
court.  The bystander=s affidavits
merely assert that appellee=s benefits from
her new job could represent a substantial part of the estate that should have
been divided.  This does not show that
missing evidence was presented to the trial court at trial that should be reviewed
by this court on appeal.  See Spivey
v. James, 1 S.W.3d 380, 385 (Tex. App.CTexarkana 1999,
pet. denied) (op. on reh=g) (AIn an evidentiary
context, a bill of exceptions exists when a trial court refuses to admit
evidence and counsel then provides that evidence for appellate
review. . . .  When
providing a bill of exceptions, further, the evidence must have been presented
to the trial court at trial or no error is shown.@) (citations
omitted).  Accordingly, we overrule
appellant=s twenty-third issue.[9]

Access to Funds to Pay Counsel








Appellant contends in his twenty-fourth and twenty-fifth
issues that the trial court did not allow him access to the community funds
held in trust by appellee=s attorney so that appellant could obtain
counsel. The record shows that during a hearing on September 15, 2004 the trial
court encouraged appellant to obtain counsel and specifically stated that it
would allocate funds from the trust to pay his counsel=s retainer.[10]  On October 11, 2004, the trial court found
that appellant was not indigent because he could have access to the trust
account being held by appellee=s attorney.  Additionally, appellant states in his brief
and the record shows that his attorney was in fact paid $5,000 from the trust
account.  We, therefore, overrule
appellant=s twenty-fourth and twenty-fifth issues.[11]

Failure to Hold
Hearing on Motion for New Trial

In his twenty-sixth issue, appellant
contends that the trial court erred by failing to hold an evidentiary hearing
on his motion for new trial.  Whether to
hold a hearing on a motion for new trial is in the trial court=s discretion.  Jefa Co. v. Mustang Tractor & Equip.
Co., 868 S.W.2d 905, 909 (Tex. App.CHouston [14th
Dist.] 1994, writ denied); Parham v. Wilbon, 746 S.W.2d 347, 351 (Tex.
App.CFort Worth 1988,
no writ).  The only time a trial court is
required to hold an evidentiary hearing on a motion for new trial is when the
ground for the motion involves jury misconduct. 
Tex. R. Civ. P. 327; Jefa,
868 S.W.2d at 909; Parham, 746 S.W.2d at 351.  This case was a bench trial; therefore, the
trial court did not err by failing to hold such a hearing.  We overrule appellant=s twenty-sixth
issue.








Judicial Errors in
Decree

In his twenty-seventh issue, appellant
contends that the trial court made judicial errors in the decree.  Although appellant argues law pertinent to
the propriety of a judgment nunc pro tunc, it appears that his true contention
is that the final decree, which was signed on February 9, 2006, does not
comport with a November 28, 2005 letter from the trial court to the parties
communicating its decision about the property division.  However, we have compared the decree and
letter and conclude that the decree accurately reflects the trial court=s ruling in its
letter.  Accordingly, we overrule
appellant=s twenty-seventh issue.

Alleged Inaccuracies in Trial Record

In his twenty-eighth issue, appellant contends that the
trial court erred by denying his request to correct an alleged inaccuracy in
the reporter=s record. According to appellant=s supplemental
brief, the record incorrectly shows the purchase price of the pool at the
Chimney Rock property as $10,000.

The record shows that the following exchange occurred at
trial on November 14, 2005:

Q. And do you know how much y=all agreed to pay for that pool?

 

A. The pool
was without finance charges, it started at 20,000 plus the interest.  








Q. And do you know how long the
note was supposed to last?

 

A. I think it was a ten-year note.
It ran out last year. It got paid for last year sometime.

 

Q. She made some of the payments
after you were incarcerated, correct?

 

A. That=s correct.

 

Q. So there were payments, am I to
understand, for about 15 years on that?

 

A. I think, yeah, about 15 years is
what it was. Either 10 or 15. I can=t recollect right off. It started at around 1990 up until
last year is when the last payment she made on it in 2004.

 

Q. And you believe that B you believe that the purchase
price was about $20,000?

 

A. 10,000

 

Q. Huh?

 

A. 10,000

 

Q. All right. 

 








On appeal, appellant filed a motion alleging that the
references to the $10,000 purchase price for the swimming pool were inaccurate
and that the amount should have been $20,000. In accordance with Texas Rule of
Appellate Procedure 34.6(e)(2), we abated the appeal and remanded the matter to
the trial court to determine whether the reporter=s record was
indeed inaccurate.  See Tex. R. App. P. 34.6(e)(2); Garcia
v. Barreiro, 115 S.W.3d 271, 277 n.3 (Tex. App.CCorpus Christi
2003, no pet.).  The trial court held a
hearing on the motion on November 17, 2006. 
The trial court informed appellant during the hearing that the purpose
of the hearing was not to change his testimony, but rather to determine whether
the words that were written in the reporter=s record were the
words that came out of his mouth at the time of trial.  Appellant testified at that hearing that the
reporter=s record was not
actually inaccurate but that appellant had misstated the purchase price during
his testimony.  Because appellant did not
contend that there were actually inaccuracies in the reporter=s record, but
merely that he wanted to change his testimony as to the purchase price, we
overrule appellant=s twenty-eighth issue.

Additional
Findings of Fact and Conclusions of Law








In his second and third issues, appellant
contends that the trial court erred by refusing to make additional findings of
fact and conclusions of law.  A trial
court is required to file findings of fact and conclusions of law within twenty
days after a timely request is made.  See
Tex. R. Civ. P. 297; Main
Place Custom Homes, Inc. v. Honaker, 192 S.W.3d 604, 612 (Tex. App.CFort Worth 2006,
pet. denied).  Upon a party=s timely request
for additional findings, the trial court Ashall file any
additional or amended findings and conclusions that are appropriate.@  Tex.
R. Civ. P. 298; Main
 Place
, 194 S.W.3d at 612.  Additional findings are not required if the original
findings and conclusions Aproperly and succinctly relate the
ultimate findings of fact and law necessary to apprise [the party] of adequate
information for the preparation of [the party=s] appeal.@  Balderama v. W. Cas. Life Ins. Co.,
794 S.W.2d 84, 89 (Tex. App.CSan Antonio 1990),
rev=d on other grounds, 825 S.W.2d 432
(Tex. 1991); see Main Place, 194 S.W.3d at 612; Jamestown Partners,
L.P. v. City of Fort Worth, 83 S.W.3d 376, 386 (Tex. App.CFort Worth 2002,
pet. denied); In re Marriage of Morris, 12 S.W.3d 877, 886 (Tex. App.CTexarkana 2000, no
pet.); Finch v. Finch, 825 S.W.2d 218, 221 (Tex. App.CHouston [1st
Dist.] 1992, no writ).  An ultimate fact
is one that would have a direct effect on the judgment.  Main
 Place
, 194 S.W.3d at 612; Morris, 12
S.W.3d at 886.  If the refusal to file
additional findings does not prevent a party from adequately presenting an
argument on appeal, there is no reversible error.  Main Place, 194 S.W.3d at 612; Jamestown
Partners, 83 S.W.3d at 386; Johnston v. McKinney Am., Inc., 9 S.W.3d
271, 277 (Tex. App.CHouston [14th Dist.] 1999, pet.
denied).  If the requested findings will
not result in a different judgment, the findings need not be made.  Main
 Place
, 194 S.W.3d at 613; Johnston, 9 S.W.3d at 277.













Here, appellant requested additional findings on the
following matters:[12]  (1) why the trial court did not allow
appellee to testify about her new job and 401(k) retirement and other benefits;
(2) how the Harlem Street property was acquired and why the trial court chose
the method it did for disbursing attorney=s fees from
appellee=s counsel=s trust fund; (3)
why the trial court chose to award appellee all of her retirement or other
benefits; (4) how the trial court construed the 1986 deed to appellant and
whether the deed was ambiguous; (5) whether the trial court Aanswered the legal
question, that would determine when property is considered separate and what
constitutes a gift or could a gift be made to the community estate@; (6) whether the
trial court considered appellant=s counterclaim;
(7) why the trial court did not make a monetary award to appellant for appellee=s selling two of
his vehicles; (8) correction of the address of Chimney Rock property, which
shows Arlington instead of Fort Worth on page two of the findings of fact and
conclusions of law;[13]
(9) whether the trial court ruled Aon all issues
formed in the final decree of divorce@; and (10) why the
trial court did not rule on motions filed by appellant while he was acting pro
se.[14]

None of the matters raised in appellant=s request for
additional findings would result in a different judgment.  In its findings of fact and conclusions of
law, the trial court adequately explained the characterization and division of
the parties= property, including the factors it
considered in making a just and right division. 
It also rejected any reimbursement to appellant under any theory,
including any equitable theory.  Thus,
the trial court=s original findings and conclusions are
sufficient for appellant to adequately present his contentions on appeal.  Accordingly, we overrule appellant=s second and third
issues.

Just and Right Division








In his first, nineteenth, and twenty-first issues, appellant
complains that the trial court did not make a just and right division of the
parties= community
property.  Specifically, he complains
about the trial court=s award to appellee of all of her General
Motors retirement benefits, the trial court=s finding that
appellant failed to support appellee when he went to prison, the trial court=s finding that it
took the community debt into account when dividing the property, the trial
court=s denial of
appellant=s reimbursement claim, and the trial court=s determination
that the Chimney Rock property was appellee=s separate
property. 








A trial court is charged with dividing the community estate
in a Ajust and right@ manner,
considering the rights of both parties.  Tex. Fam. Code Ann. ' 7.001; Boyd,
131 S.W.3d at 610; Zeptner, 111 S.W.3d at 734.  Trial courts are afforded wide discretion in
dividing marital property upon divorce; therefore, a trial court=s property
division may not be disturbed on appeal unless the complaining party
demonstrates from evidence in the record that the division was so unjust and
unfair as to constitute an abuse of discretion. 
Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985); Boyd, 131 S.W.3d at
610.  To determine whether a trial court
abused its discretion, we must decide whether the trial court acted without
reference to any guiding rules or principles; in other words, whether the act
was arbitrary or unreasonable.  See
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241‑42 (Tex. 1985), cert. denied, 476 U.S. 1159
(1986); Boyd, 131 S.W.3d at 610. 
We must indulge every reasonable presumption in favor of the trial court=s proper exercise
of its discretion in dividing marital property. 
Boyd, 131 S.W.3d at 610; Pletcher v. Goetz, 9 S.W.3d 442,
446 (Tex. App.CFort Worth 1999, pet. denied) (op. on reh=g).  Accordingly, we will reverse the cause only
if the record demonstrates that the trial court clearly abused its discretion,
and the error materially affected the just and right division of the community
estate.  Jacobs, 687 S.W.2d at 732‑33;
Boyd, 131 S.W.3d at 610.

The trial court must order an equitable, but not
necessarily equal, division of the community estate.  Barnard v. Barnard, 133 S.W.3d 782,
787 (Tex. App.CFort Worth 2004, pet. denied); Tate v.
Tate, 55 S.W.3d 1, 10 (Tex.
App.CEl Paso 2000, no
pet.); Vandiver v. Vandiver, 4 S.W.3d 300, 302 (Tex. App.CCorpus Christi
1999, pet. denied).  The Texas Supreme
Court has set forth a nonexclusive list of factors the trial court may consider
in dividing the marital estate.  See
Murff v. Murff, 615 S.W.2d 696, 698‑99 (Tex. 1981); Barnard, 133 S.W.3d at
785.  These factors include the disparity
and abilities of income or earning capacity, the spouses= capacities and
abilities, benefits that a party not at fault would have derived from the
marriage had it continued, business opportunities, education, relative physical
condition and obligations, disparity of ages, size of separate estates, and
nature of the property.  Murff,
615 S.W.2d at 698-99; Barnard, 133 S.W.3d at 785.








We have already determined that the trial court did not
abuse its discretion by awarding the Chimney Rock property to appellee as her
separate property and by rejecting appellant=s reimbursement
claim.  The trial court awarded appellant
numerous items of personal property, including equipment he used in his work as
a general contractor before he went to prison. 
It also awarded appellant a used Lincoln Town Car, worth approximately
$4,000.[15]   It awarded appellee numerous items of
personal property, any life insurance policies insuring her life, all burial
policies in her name, the balance held in her counsel=s trust fundBto be applied to
the federal income tax liability for the sale of the Harlem Street property, and all of her
retirement benefits from General Motors. 
The trial court divided the parties= community debts
as follows:  approximately $26,121.51[16]
in appellant=s name to appellant, and approximately
$37,057.29 to appellee. 








Appellee testified that appellant would have a one-eighth
community property interest in her retirement benefits, with a current value at
the time of trial of $20.19 per month, but she asked the trial court to award
the entire amount of those benefits to her based on the allegations in her
petition, including appellant=s fault in the
breakup of the marriage, appellant=s criminal
conviction, and her allegation that he had wasted assets.  There is no requirement that community
pension benefits be divided equally, and the trial court has the discretion to
award the entire amount to one spouse, so long as no abuse of discretion is
shown in the overall division of the estate. 
Woods v. Woods, 619 S.W.2d 590, 592 (Tex. App.CHouston [14th
Dist.] 1981, no writ); In re Marriage of Butler, 543 S.W.2d 147, 150
(Tex. Civ. App.CTexarkana 1976, writ dism=d).  Appellant=s community
property interest in appellee=s retirement
benefits was not significant, nor did the trial court=s awarding
appellee the entire amount of those benefits result in an inequitable division
of the parties= community estate.








Additionally, contrary to appellant=s contention, the
trial court divided the parties= debts, even
charging appellee with a greater amount of debt than appellant.  Appellee testified that since appellant had
been incarcerated, he had not assisted in paying any of the household bills and
that she had not received any money from him since 1999.  She testified that she had been making the
house payments and paying taxes on the house since then.  Although the parties had approximately $5,000
in a savings account when appellant went to prison, appellee testified that she
used that money to pay bills.  Finally,
appellee also testified that the bulk of the proceeds from the sale of the
Harlem Street property would have been available to divide between the parties
but for appellant=s actions during the pendency of the
divorce that caused her to incur additional attorney=s feesCi.e., his filing
of voluminous motions requiring responses by her attorney. 

Considering the entire record, we conclude and hold that
the trial court=s division of the parties= community
property was not so unfair and unjust as to constitute an abuse of discretion.  See Murff, 615 S.W.2d at 698-99; Barnard,
133 S.W.3d at 785.  We overrule appellant=s first,
nineteenth, and twenty-first issues.

 

 

Waived Issues








In his eighteenth, twentieth,
and twenty-second issues, appellant contends that the trial court abused its
discretion by characterizing appellee=s life insurance policies as personal property and awarding them to
appellee without any reimbursement to appellant, by failing to make an Ain kind@ division of
property rather than a monetary division, and by failing to sanction appellee for
selling some of appellant=s
vehicles.  However, appellant failed to
adequately argue or appropriately cite authority for these issues.  See Tex.
R. App. P. 38.1(h).  An
inadequately briefed issue may be waived on appeal.  Fredonia State Bank v. Gen. Am. Life Ins. Co.,
881 S.W.2d 279, 284-85 (Tex. 1994); McClure
v. Denham, 162 S.W.3d 346, 349 (Tex.
App.CFort Worth 2005, no pet.). 
Therefore, we overrule appellant=s eighteenth, twentieth, and twenty-second issues.

Other Briefed
Issues

Although appellant does not bring specific
issues challenging the following matters, he does complain about them in his
brief and references authority in support of his arguments.  Accordingly, construing his brief liberally,
as we must, we will address the arguments that we are able to discern.  See Tex.
R. App. P. 38.9 (stating that briefing rules should be construed
liberally); Dominey v. Unknown Heirs & Legal Representatives of Lokomski,
172 S.W.3d 67, 71 (Tex App.CFort Worth 2005,
no pet.); Interstate Apartment Enters., L.C. v. Wichita Appraisal Dist.,
164 S.W.3d 448, 453 n.3 (Tex. App.CFort Worth 2005,
no pet.).

Failure to Appoint Counsel

Appellant claims that the trial court erred by not inquiring into his mental competence when he raised
questions about his competency and need of an attorney at the beginning and
then again throughout the proceedings.








Texas has statutorily
provided for appointed counsel in juvenile delinquency cases, in parental
rights termination cases, and in cases for which application for court-ordered
mental health services has been made.  Gibson v. Tolbert, 102 S.W.3d 710, 712 (Tex. 2003); see Tex. Fam. Code Ann. '' 51.10, 107.013 (Vernon Supp. 2006); Tex. Health & Safety Code ' 574.003 (Vernon
2003).  The legislature has also
statutorily provided for the possibility of appointed counsel in other civil
matters by conferring upon a district court judge the discretion to Aappoint counsel to
attend to the cause of a party who makes an affidavit that he is too poor to
employ counsel to attend to the cause.@  Gibson, 102 S.W.3d at 712 (quoting Tex. Gov=t Code Ann. ' 24.016 (Vernon 2004)).

The Texas Supreme Court has never held that Aa civil litigant
must be represented by counsel in order for a court to carry on its essential,
constitutional  function.@  Gibson, 102 S.W.3d at 712 (quoting Travelers
Indem. Co. v. Mayfield, 923 S.W.2d 590, 594 (Tex. 1996) (orig. proceeding)). No limits
have been addressed as to the court=s discretionary
authority to appoint counsel.  Id.  Courts do have an inherent power to appoint
counsel under exceptional circumstances.  Id.  Only by evaluating the unique circumstances
of a given civil case could a court ever determine that it has no reasonable
alternative than to appoint counsel.  Id.








The facts in this case do not demonstrate rare and unusual
circumstances such that a trial court judge would determine there was no
reasonable alternative than to appoint counsel. 
Appellant filed voluminous motions in the trial court prior to obtaining
counsel.  Several of those motions
resulted in hearings and some in relief. 
Appellant was ultimately able to obtain counsel before a hearing on
March 8, 2005, and counsel represented him through trial.  We hold that the trial court did not abuse
its discretion by determining that exceptional circumstances warranting the
appointment of counsel did not exist.[17]

Denial of Recusal Motion

On February 1, 2005, appellant filed a motion to recuse the
trial judge.  On February 11, 2005, after
a hearing at which appellant participated by conference call, the presiding
judge of the Eighth Administrative Judicial Region denied the motion.








We review the denial of a motion to recuse for an abuse of
discretion.  Tex. R. Civ. P. 18a(f); Vickery v. Vickery, 999 S.W.2d
342, 349 (Tex.
1999); Carmody v. State Farm Lloyds, 184 S.W.3d 419, 420 (Tex. App.CDallas 2006, no
pet.); Sommers v. Concepcion, 20 S.W.3d 27, 41 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied).  When a party challenges
the denial of a recusal motion based on alleged bias or impartiality, the party
must show that this bias arose from an extrajudicial source and not from
actions during the pendency of the trial court proceedings unless the actions
during the proceedings indicate a high degree of favoritism or antagonism that
renders fair judgment impossible.  Sommers,
20 S.W.3d at 41; Grider v. Boston Co., 773 S.W.2d 338, 346 (Tex. App.CDallas 1989, writ
denied).

Here, appellant=s recusal motion
and his arguments at the hearing show that he was dissatisfied with the trial
court=s rulings.  He did not allege any extrajudicial source of
bias or impartiality, nor did he demonstrate that the trial court=s actions during
the proceedings showed a high degree of favoritism or antagonism that rendered
fair judgment impossible.  A party=s remedy for
unfair or wrong rulings is to assign error regarding those rulings.  Sommers, 20 S.W.3d at 41; Grider,
773 S.W.3d at 346.  Accordingly, we
conclude and hold that there was no error in the denial of the recusal motion.

Appellate Attorney=s Fees








In the final decree, the trial court awarded appellee Aa judgment of
$20,000.00 against [appellant] for attorney=s fees on appeal
for the benefit of [appellee=s] attorney, Michael
S. Newman, together with all costs and expenses. . . . conditioned on the
pursuit of an ultimately unsuccessful appeal by@ appellant.  However, on the same day it signed the
decree, the trial court allowed Newman to withdraw from representation of appellee,
and appellee has acted pro se in this appeal, declining to file a brief.  Accordingly, we conclude that the trial court
abused its discretion by including this appellate attorney=s fees provision
in the decree.  See Pullman v. Brill,
Brooks, Powell & Yount, 766 S.W.2d 527, 530 (Tex. App.CHouston [14th
Dist.] 1988, no writ) (acknowledging that Ait is true that a
party must have retained an attorney to be eligible for attorney=s fees@).

Conclusion

Having overruled all of appellant=s issues,[18]
but also having concluded that the award of appellate attorney=s fees to appellee=s counsel Newman
was in error, we modify the decree to delete the award of appellate attorney=s fees and
accompanying remittitur provisions.  We
affirm the decree as modified.

 

 

PER CURIAM

 

PANEL F:    LIVINGSTON,
GARDNER, and MCCOY, JJ.

 

DELIVERED: August 31,
2007

 

 











[1]See Tex. R. App. P. 47.4.





[2]Appellee
declined to file a brief.





[3]During
a May 20, 2004 hearing in which appellant was asking the trial court to help him
obtain records for the purpose of bringing a reimbursement claim for community
expenditures on the Chimney Rock property, the following exchange occurred:

 

THE
COURT:  All right.  Is - - you=re saying that the house that
she lives in is her separate property?

 

[APPELLANT]:  Yes, sir. 
It=s her
separate property, but I - -

 

THE
COURT:  You acknowledge that it=s her
separate property?

 

[APPELLANT]:  Yes, sir.





[4]Appellate
courts have given preclusive effect to admissions made in sworn inventories and
appraisements filed with the trial court. Dutton, 18 S.W.3d at 853; Roosevelt, 699 S.W.2d at 374; see also
Tschirhart v. Tschirhart, 876 S.W.2d 507, 509 n.1 (Tex. App.BAustin
1994, no writ).  





[5]Appellant
also appears to contend that he was not mentally competent to make a judicial
admission and that the trial court should have inquired into his
competency.  As we note later, while
acting pro se, appellant filed numerous motions in the trial court, obtaining
hearings and even some relief.  Thus, the
record does not show that appellant could not make a clear, deliberate, and
unequivocal statement that would support a judicial admission.  Moreover, appellant announced his intent to
pursue a reimbursement claim early in the divorce, which he maintained until
the actual trial, and which is consistent with his admission that the property
was appellee=s
separate property.





[6]Although
appellant characterized his claim generally as one for Areimbursement,@ his claim
for the amount the community paid to reduce the debt on the Chimney Rock
property falls under the definition of Aeconomic contribution@ in
the family code.  See Tex. Fam. Code Ann. '
3.402(a); see also id. ' 3.402(b) (providing that A>Economic
contribution= does
not include the dollar amount of:  (1)
expenditures for ordinary maintenance and repair or for taxes, interest, or
insurance; or (2) the contribution by a spouse of time, toil, talent, or effort
during the marriage.@); Cardwell
v. Cardwell, 195 S.W.3d 856, 860 (Tex. App.CDallas
2006, no pet.) (holding that wife=s claim for Areimbursement@ was
more properly characterized as claim for economic contribution).





[7]Appellee
agreed that TAD had appraised the property at this value.





[8]Appellant
tried to introduce letters from Allstate showing these amounts, but the trial
court sustained appellee=s
hearsay objection to them.  Nevertheless,
the documents are included in the appellate record as trial exhibits.





[9]To
the extent that appellant complains about the remaining matters set forth in
his bill of exception and the bystander=s affidavits, his argument
fails for the same reasons.





[10]In
response to appellant=s
allegation that the trial court had denied him funds from the trust account to pay
for an attorney, the trial court stated:

 

I don=t
recall you ever asking me to pay any money out of the funds for an
attorney.  I would love for an attorney
to be representing you in this case.  I
would encourage you to contact an attorney. 
I will be happy to pay a retainer out of these funds for you as
well.  I would very much like for you to
have an attorney.  It would make - - that
would make this process go a lot smoother, and I think you would be much better
represented than trying to represent yourself. 





[11]We
also deny appellant=s
motion for an accounting of the funds held in appellee=s
counsel=s
trust fund; the record indicates the disposition of the entire balance of the
fund.





[12]Appellant
did not propose specific findings; he merely stated the issues he wanted
additional findings for.





[13]This
mistake is corrected in the supplemental findings of fact and conclusions of
law. 





[14]Appellant=s
request for additional findings is not included in the clerk=s
record, which required extensive supplementation based on the numerous
documents filed by appellant.  However,
appellant filed a copy of the request simultaneously with this court.





[15]The
decree also awarded appellant a 1979 Yugo and 1987 Dodge van, but appellee
testified that she had sold them before trial for nominal amounts. 





[16]Appellant
testified at trial that the credit card debt had been Acharged
off.@ 





[17]See,
e.g., Ex Parte Munoz, 139 S.W.3d 349, 351 (Tex. App.CSan Antonio 2004, no pet.)
(concluding that expunction proceedings are not the type of extraordinary civil
proceedings that require appointment of counsel and concluding that trial court
did not abuse its discretion by denying motion for appointment of counsel); Wigfall
v. Tex. Dep=t of
Criminal Justice, 137 S.W.3d 268, 274-75 (Tex. App.CHouston
[1st Dist.] 2004, no pet.) (holding that trial court did not abuse its
discretion by denying appointed counsel to inmate suing prison officials). 





[18]To
the extent that relief has not been granted on any of the numerous motions
appellant has filed, all relief is denied.